UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LETICIA RODRIGUEZ, individually and d/b/a EMPERADOR AZTECA MEXICAN RESTAURANT,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF MOSES LAKE, a Municipal Corporation; BRETT A. BASTIAN and JANE DOE BASTIAN, individually, and as a marital community,<br><br>    Defendants. | NO. CV-07-329-EFS<br><br>**ORDER GRANTING AND DENYING AS MOOT IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

  Before the Court, without oral argument, is Defendant City of Moses Lake and Brett A. Bastian's Motion for Summary Judgment. (Ct. Rec. 18.) After reviewing the submitted material and relevant authority, the Court is fully informed and grants and denies as moot in part Defendants' motion. The reasons for the Court's Order are set forth below.

ORDER * 1

## I. Background[1]

Plaintiff Leticia Rodriguez owns the Emperador Azteca Mexican restaurant in Moses Lake, Washington, and lives in a small house behind the restaurant. (Ct. Rec. 39 at 2.) At 3:40 a.m. on October 17, 2000, the Moses Lake Fire Department responded to a structure fire at Plaintiff's residence. *Id.* Defendant Brett Bastian, Moses Lake's Fire Marshal, investigated and determined that the fire was caused by a clothes dryer left running with the door open. (Ct. Rec. 21, Ex. 3.) Defendant Bastian's on-site investigation lasted approximately eight (8) hours. (Ct. Rec. 34 at 4.)

The next day, the Columbia Basin Herald reported on the fire. (Ct. Rec. 39 at 3.) The article identified Plaintiff's address and indicated the fire was caused by residents "using a dryer in the house for heat." *Id.* Plaintiff denies using the dryer for heat and insists fire department officials provided improper information to the newspaper. (Ct. Rec. 29 at 2.) After the article ran, Plaintiff received phone calls from individuals criticizing her "stupid" behavior. (Ct. Rec. 35 at 3.)

On October 19, 2000, Plaintiff's insurance adjuster, Kevin Rhoton, visited Plaintiff's residence to examine the damage. (Ct. Rec. 39 at 3.)

---

[1] In a motion for summary judgment, the facts from the parties' pleadings are set forth in a light most favorable to the nonmoving party - here, that is Plaintiff. *Leslie v. Grupo ICA,* 198 F.3d 1152, 1158 (9th Cir. 1999). The Background also incorporates facts from the parties' Joint Statement of Uncontroverted Facts. (Ct. Rec. 39.)

ORDER \* 2

During Mr. Rhoton's initial visit, he did not take photos, conduct an inventory, or speak with Plaintiff. *Id.*

On October 23, 2000, Defendant City of Moses Lake ordered the demolition of Plaintiff's house. (Ct. Rec. 29 at 3.) Two (2) days later, Mr. Rhoton asked Plaintiff to inventory all items lost in the fire. *Id.* Plaintiff's inventory included an Acrosonic piano, a Yamaha keyboard, and a juke box. (Ct. Re. 39 at 4.) These items belonged in the restaurant, but were temporarily located in Plaintiff's residence while the restaurant underwent a remodeling project. (Ct. Rec. 29 at 2.) The Yamaha keyboard and jukebox were stored in Plaintiff's basement; the Acrosonic piano was stored in Plaintiff's living room. *Id.* After the fire, a friend helped Plaintiff remove the fire-damaged piano from the living room to her new home; the Yamaha keyboard and the juke box were buried when the house was demolished. *Id.* at 3. Mr. Rhoton reviewed Plaintiff's inventory but did not ask about the piano, the Yamaha keyboard, or the juke box. *Id.*

On January 25, 2001, Mr. Rhoton contacted Defendant Bastian and inquired whether he noticed a piano, a Yamaha keyboard, or a juke box during his fire investigation. (Ct. Rec. 39 at 5.) Defendant Bastian responded and "confirm[ed] that these items were not present in [Plaintiff's residence] during the fire." (Ct. Rec. 36, Ex. 3.)

On November 16, 2001, the Grant County Prosecutor's Office charged Plaintiff with filing a fraudulent insurance claim. (Ct. Rec. 35 at 74.) On December 4, 2001, Plaintiff met with Defendant Bastian and showed him a current photo of the fire-damaged piano she removed from her old living room in order to prove its existence. *Id.* at 6-7. Plaintiff also

explained her old home had a basement that Defendant Bastian overlooked during his investigation. *Id.* Two (2) days later, Plaintiff visited Defendant Bastian again, this time requesting blue prints in order to prove her old home contained a basement. *Id.* at 7. Defendant Bastian denied having blue prints and directed Plaintiff to correspond with the Grant County Prosecutor's Office from now on. *Id.* at 81.

Plaintiff hired an attorney to defend her in the criminal action. *Id.* at 8. Plaintiff's attorney provided Grant County Prosecutor's Office with a list of exculpatory witnesses, a picture of the fire-damaged piano, and witness declarations. (Ct. Rec. 39 at 8.) Despite this information, the Prosecutor's Office declined to dismiss the case. Grant County Superior Court Judge John Antosz conducted a bench trial in mid-August 2002 and acquitted Plaintiff of all charges. (Ct. Rec. 35 at 8.)

On October 17, 2007, Plaintiff filed a Fourth Amended Complaint for Damages in Grant County Superior Court, alleging claims for defamation, outrage, malicious prosecution, and a 42 U.S.C. § 1983 claim based on discrimination. (Ct. Rec. 1-4.) Defendants removed the action to federal district court two (2) days later. (Ct. Rec. 1.) On October 6, 2008, Defendants filed the summary judgment motion now before the Court. (Ct. Rec. 18.)

**II. Discussion**

**A. Summary Judgment Standard**

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once a

ORDER ~ 4

party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

ORDER \* 5

**B. Section 1983 Liability**

Section 1983 creates a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and the laws" of the United States. Establishing a section 1983 claim requires a plaintiff to show: 1) that a right secured by the Constitution or laws of the United States was violated, and 2) that the alleged violation was committed by a person acting under the color of State law. *Long v. County of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir. 2006).

Here, Plaintiff asserts section 1983 claims against both Defendants.[2] Before delving into the details surrounding municipal liability and qualified immunity, it is necessary to address whether genuine factual issues regarding Plaintiff's alleged constitutional violations exist. Plaintiff asserts that Defendants' discriminatory behavior abridged her rights under the Equal Protection Clause, the Due Process Clause, the Privilege and Immunities Clause, and affected her right to interstate travel. Each alleged violation will be addressed in turn.

**1. Equal Protection Claim**

To succeed on a race-based equal protection claim, a plaintiff must prove that the defendant "acted in a discriminatory manner and that the discrimination was intentional." *Bingham v. City of Manhattan Beach,* 341 F.3d 939, 948 (9th Cir. 2006). To survive summary judgment, a plaintiff

---

[2] A section 1983 claim against the City of Moses Lake is permissible, so long as it is not based on respondeat superior, because Congress intended the term 'person' to include municipalities. *Christie v. Iopa,* 176 F.3d 1231, 1234 (9th Cir. 1999).

ORDER * 6

"must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [the] decision . . . was racially motivated." *Keyser v. Sacramento City Unified Sch. Dist.,* 265 F.3d 741, 754 (9th Cir. 2001) (citation and quotations omitted). Simply put, without proof of discriminatory intent or motive, a race-based equal protection claim cannot lie. *See Navarro v. Block,* 72 F.3d 712, 716 (9th Cir. 1996).

Even viewing the evidence in Plaintiff's favor, there is not a scintilla of evidence that Defendants acted with the discriminatory intent or motive necessary to establish a race-based equal protection claim. In fact, it is not even clear that Plaintiff asserted a race-based equal protection claim. Plaintiff's Fourth Amended Complaint is unhelpful. The complaint states a section 1983 cause of action based on discrimination without identifying the discrimination type (age, race, gender, etc.) or form (equal protection, due process, etc.); rather, it simply asserts that Defendants' actions "evinced intentional or purposeful discrimination." (Ct. Rec. 1-4 at 6.)

Plaintiff's summary judgment opposition is equally unhelpful. It is true the opposition memorandum's "Introduction" section asserts that "[a] jury could find that Ms. Rodriguez was treated differently by the predominantly-White police and fire department because she was Hispanic." (Ct. Rec. 28 at 2-3.) It is also true the opposition memorandum's "Statement of Facts" section claims that "Fire Marshall Bastian's zeal to prosecute a Hispanic business owner forced Ms. Rodriguez to hire attorneys to defend her for the criminal prosecution and trial." *Id.* at 9. But that is all. The only statement explicitly putting

Defendants - and the Court - on notice that a race-based equal protection claim exists is the following paragraph:

> Ms. Rodriguez suffered an abuse of government power and violations of the most basic constitutional rights - a loss of her liberty, a denial of due process, <u>a denial of equal protection</u>, and violation of her privileges and immunities, and other violations. She had the right to not be subject to false accusations. The Fourteenth Amendment States: No State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any State deny any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

*Id.* at 11 (emphasis added) (internal quotations omitted). Despite this claim, nowhere does Plaintiff 1) identify the race-based equal protection standard, 2) argue that genuine factual issues regarding a race-based equal protection claim remain for trial, 3) point to any evidence that Defendants' conduct was racially motivated, or 4) demonstrate how Defendants treated her differently from other similarly-situated individuals. As best the Court can tell, Plaintiff's race-based discrimination claim rests on the fact that she is Hispanic and the City's fire department is predominantly white. Such basic and unsupported bases are insufficient to survive summary judgment. *See Bingham,* 341 F.3d at 948 (finding that an African-American driver, a white police officer, and an allegedly improper traffic stop is insufficient by itself to raise an inference of racial discrimination). Accordingly, summary judgment on Plaintiff's race-based equal protection claim is proper.

**2. Substantive Due Process Claim**

Substantive due process protects individuals from arbitrary deprivation of their liberty by the government. *Brittain v. Hansen,* 451

1  F.3d 982, 991 (9th Cir. 2006). To establish a substantive due process
2  claim, a plaintiff must show that the government deprived him or her of
3  life, liberty, or property in such a way that "shocks the conscience."
4  *Id.*

5  Like Plaintiff's race-based equal protection claim, it is unclear
6  if Plaintiff even asserts a substantive due process claim. Plaintiff's
7  complaint references discrimination and her summary judgment opposition
8  mentions "a denial of due process," but there are no cited facts or law
9  to substantiate her vague reference.[3] Thus, the Court is left with no
10 guidance on how Defendants' conduct allegedly "shocks the conscience" and
11 denied Plaintiff life, liberty, or property. It is not the Court's task
12 to scour the record in search of genuine factual issues regarding
13 Plaintiff's substantive due process claim; rather, it is the non-moving
14 parties' job to "identity with reasonable particularity the evidence that
15 precludes summary judgment." *Keenan v. Allen,* 91 F.3d 1275, 1279 (9th
16 Cir. 1996). Plaintiff failed to do so. Even viewing the facts in
17 Plaintiff's favor, summary judgment on Plaintiff's substantive due
18 process claim is appropriate.

**3. Procedural Due Process**

The Fourteenth Amendment states that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law. U.S. CONST. amend. XIV, § 1. Procedural due process applies only to the deprivation of interests encompassed by the Fourteenth Amendment's

---

[3] Even assuming Plaintiff is asserting a due process claim, the Court is unsure whether the claim is based on substantive or procedural due process deprivations. Out of caution, both will be addressed.

ORDER * 9

protection of liberty and property. *Bd. of Regents v. Roth,* 408 U.S. 564, 569 (1972). To establish a procedural due process claim, a plaintiff must allege: 1) a liberty or property interest protected by the Constitution; 2) a deprivation of the interest by the government; and 3) lack of process. *Wright v. Riveland,* 219 F.3d 905, 913 (9th Cir. 2000).

Even viewing the evidence in Plaintiff's favor, her procedural due process claim fails as a matter of law because she set forth no facts establishing what liberty or property interest is at stake, how Defendants deprived her of a liberty or property interest, and what lack of process occurred. It is Plaintiff's, not the Court's, responsibility to identify genuine factual issues for trial. As the Ninth Circuit humorously stated: "judges are not like pigs, hunting for truffles buried in briefs." *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994). Summary judgment on this claim is proper.

**4. Right to Interstate Travel**

In her summary judgment opposition, Plaintiff argues for the first time that her criminal pretrial release conditions prevented her from visiting family in Mexico and unlawfully burdened her right to interstate travel. (Ct. Rec. 28 at 12.) Plaintiff's complaint contains no hint of a section 1983 claim based on the right to interstate travel. Accordingly, this belatedly raised claim is not properly before the Court. *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1291-92 (9th Cir. 2000) (District court did not err in refusing to entertain new liability theory raised for the first time at the summary judgment stage.), *cert. denied,* 533 U.S. 950 (2001).

ORDER * 10

### 5. Privileges and Immunities Clause

Plaintiff also argues for the first time in her summary judgment opposition that Defendants violated her "privileges and immunities." (Ct. Rec. 28 at 11.) Lacking guidance from Plaintiff, the Court infers that she is referring to the Privileges and Immunities Clause of the Fourteenth Amendment, which states, in pertinent part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;

U.S. CONST. amend. XIV, § 1. The only Supreme Court case to enumerate a specific privilege or immunity in this clause involved the "right to travel." *Saenz v. Roe,* 526 U.S. 489, 502-03 (1999).[4] Thus, the Court construes Plaintiff's reference to her "privileges and immunities" as a variation of the argument that Defendants burdened her right to interstate travel. As discussed above, the Court declines to entertain this belatedly raised claim. *See Coleman,* 232 F.3d at 1291-92.

### 6. Conclusion

After thoroughly reviewing the submitted material and supporting authority, the Court finds Plaintiff fails to state a viable section 1983 cause of action. Rule 56 demands *specific facts* showing genuine triable issues for trial. *Matsushita Elec. Indus. Co.,* 475 U.S. at 586-87

---

[4]The Supreme Court's decision in *Saenz* "breathe[d] new life into the previously dormant Privileges and Immunities Clause of the Fourteenth Amendment . . . a provision relied upon for only the second time since its enactment 130 years ago." 526 U.S. at 511 (Rehnquist, C.J., dissenting).

ORDER ~ 11

(emphasis added). Plaintiff's "specific facts" are nothing more than sweeping, unsupported assertions referencing liberty losses, due process denials, and equal protection shortcomings. This will not do. Because both municipal liability and quality immunity discussions require a constitutional violation, which does not exist here, the Court need not engage in either analysis. *See Gillette v. Delmore,* 979 F.2d 1342, 1346-47 (9th Cir. 1992) (noting three ways to establish section 1983 municipal liability, each of which requires a constitutional violation); *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (recognizing that the first step in a qualified immunity analysis requires a constitutional right violation). This is not to say that the Court does not empathize with Plaintiff who might have been spared anxiety and expense had someone taken the time to carefully examine her evidence before or even after the charges were filed.

**7. State Law Claims**

Without Plaintiff's section 1983 claims, the question becomes what to do with her remaining state law claims. Under 28 U.S.C. § 1367(c)(3), a district court has discretion to decline supplemental jurisdiction over state claims if it has dismissed the federal claims over which it had original jurisdiction. *Brown v. Lucky Stores*, 246 F.3d 1182, 1189 (9th Cir. 2001). When jurisdiction-conferring claims are dismissed before trial, the remaining state law claims are properly remanded. *See, e.g., Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988) (when single federal-law claim is eliminated before trial, court has powerful reason to chose not to continue to exercise supplemental jurisdiction); *O'Connor v. Nevada,* 27 F.3d 357, 362-63 (9th Cir. 1994) (in scenario where federal

ORDER \* 12

claims are eliminated before trial, balance of factors of economy, convenience, fairness, and comity will point toward declining jurisdiction over remaining state claims); *see also Voigt v. Savell,* 70 F.3d 1552, 1565 (9th Cir. 1995) ("[I]f the federal claims are dismissed before trial [] the state claims should be dismissed at well.") (internal citations omitted) (brackets in original).

Here, trial is still months away and the Court has yet to hold any hearings on the case. In keeping with the long-standing principle that federal courts are courts of limited jurisdiction, *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007), this Court declines to maintain jurisdiction over Plaintiff's state law claims now that her jurisdiction-conferring claims have been dismissed.

### III. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment **(Ct. Rec. 18)** is **GRANTED** (section 1983 claims) and **DENIED AS MOOT** (state law claims) **IN PART.**

2. This matter shall be **remanded** to Grant County Superior Court, Cause No. 02-201207-4, for further proceedings.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to counsel.

**DATED** this 11th day of December 2008.

S/ Edward F. Shea
EDWARD F. SHEA
United States District Judge

Q:\Civil\2007\329.MSJ.wpd

ORDER * 13